UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                               :

LETOM MANAGEMENT INC.,                       :

                                               :      17 Civ. 3793 (PAE)
                           Plaintiff,                  :
                                               :      OPINION & ORDER
                  -v-                          :
                                               :

CENTAUR GAMING, LLC, HOOSIER PARK, LLC  :
and HOOSIER RACING AND CASINO, LLC,      :
                                               :
                           Defendants.            :
                                               :
------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/27/2017
```

PAUL A. ENGELMAYER, District Judge:

       This case arises from the alleged breach of contracts to book a venue in Anderson, Indiana for a live concert entitled "I love the 90s: The Party continues." Plaintiff Letom Management, Inc. ("Letom") alleges that defendants Hoosier Park, LLC ("Hoosier Park"), Centaur Gaming, LLC ("Centaur Gaming"), and Hoosier Racing and Casino, LLC ("Hoosier Racing and Casino") breached their express or constructive contractual obligations by (a) "cancel[ing] the contract," (b) failing to pay Letom a guaranteed amount, and (c) refusing to arbitrate. Dkt. 18 ("Pl's Opp.") at ¶ 8.

       Pending now is a motion to dismiss by Hoosier Park, the only defendant whom Letom has served. Hoosier Park argues that personal jurisdiction over it is lacking, requiring dismissal under Federal Rule of Civil Procedure 12(b)(2). On the merits, Hoosier Park disputes that the agreements between itself and Universal Attractions Agency ("UAA")—the entity whose interests Letom seeks to vindicate in this lawsuit[1]—were enforceable. On its present motion to

---

[1] The Court assumes *arguendo* that Letom has standing to bring this lawsuit. "In appropriate circumstances, … a court may dismiss for lack of personal jurisdiction without first establishing

1

dismiss, Hoosier Park argues that, even if the agreements were enforceable, they do not support exercise of personal jurisdiction, because (1) it is an out of state entity and (2) the contracts at issue were initiated by a non-New York plaintiff and involved services to be performed entirely outside this state. Hoosier Park argues that neither the jurisdictional requirements of New York Civil Practice Law and Rule § 301 or § 302, nor those of federal due process, are met.

For the reasons that follow, the Court agrees, and grants Hoosier Park's motion to dismiss the claims against it under Rule 12(b)(2).

## I. Background[2]

### A. The Parties

Letom is a New York-based corporation with its principal place of business in New York, Dkt. 1 ("Compl.") ¶¶ 8–11. Letom and UAA, on whose behalf Letom brings this lawsuit, Dkt. 14 ("Def's Brief") at 1, have a common CEO, Jeff Allen, Allen Decl. ¶ 1.

Hoosier Park is an Indiana limited liability company with its principal place of business in Indiana. Compl. ¶ 12; Head Decl. ¶ 6. Letom has alleged that Hoosier Park does business as Hoosier Park Racing, LLP and Hoosier Park Racing, LLC.

---

subject-matter jurisdiction." *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 n.6 (2d Cir. 2013) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)); *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 602 (S.D.N.Y. 2016) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits in the interests of judicial restraint and judicial economy. For example, when the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction" (internal quotation marks and citations omitted)). The contracts at issue—dated February 27, 2017, *see* Declaration of Adam Head ("Head Decl.") (Dkt. 15) Exs. 4 & 5; *see also* Pl's Opp at 2—identify UAA, not Letom, as the contracting party. If this litigation were to have proceeded, it would have been necessary for Letom to demonstrate more clearly its standing to bring this lawsuit on behalf of its apparent affiliate.

[2] The Court's account of the underlying facts of this case is drawn from the Complaint and from the parties' submissions on the motion to dismiss, including the Declarations of Adam Head, Head Decl., and of Jeff Allen, Dkt. 18-1 ("Allen Decl."), and the exhibits to these declarations.

Letom alleges that the other defendants to this suit, Centaur Gaming and Hoosier Racing and Casino, are also "domestic corporation(s)" with "principal office(s)" in Indiana. Compl. ¶ 12. However, despite the fact that the Complaint was filed on May 19, 2017, more than five months ago, Centaur Gaming and Hoosier Racing and Casino do not appear to have been served. They are not parties to the instant motion.

B.   **Factual Background**

On September 9, 2016, a UAA representative, Adam Zagor, emailed Adam Head, the Entertainment Director for Hoosier Park, seeking to book one of Hoosier Park's venues in Indiana. Head Decl. ¶¶ 9–10; Dkt. 15-1 ("Head Decl. Ex. A"). Zagor, Head, and another UAA representative, Ross Brandes, agreed to meet in early October 2016 in Nashville, Tennessee during the International Entertainment Buyers Association Conference to discuss the details of the transaction. Head Decl. Ex. A.

In Tennessee, Head met with an unspecified "UAA representative," who pitched the idea of Hoosier Park's hosting a concert entitled "I Love the 90's: The Party Continues." Head Decl. ¶ 11. On November 10, 2016, Head sent UAA an offer sheet. *Id*. at ¶ 12. After the initial offer, UAA and Hoosier continued negotiating the contracts' terms via phone and email. *Id.* at ¶ 13. On January 11, 2017, after additional back and forth, a second term sheet was sent from Hoosier to UAA. *Id*.

On March 1, 2017, Brandes emailed Head, alerting him that a potentially similar concert, entitled "I Love the 90s[,] . . . would be playing at The Lawn @ White River State Park" on July 16, 2017. Dkt 18-1 ("Allen Decl. Ex. A") at 9. Head said that this was not a problem. *Id.*

That same day, Head received two contracts from UAA dated February 27, 2017. Head Decl. ¶ 14; Pl's Opp. ¶ 2. Head made alterations to the contracts, signed them, and sent them back. Of note here, Head changed from New York to Indiana the (1) choice of law provisions,

(2) locations in which the contracts were to be entered, and (3) locations for arbitration. *See* Head Decl. Exs. 4 & 5. Payments for each were to be due in two parts, with the first round due on July 12, 2017 and the second due just after the concert. *Id*. UAA appears to have signed neither contract. *Id*. For the limited purposes of this motion, crediting plaintiffs' claim of a binding agreement, the Court assumes that the contracts were fully executed.

On April 28, 2017, Head emailed Jeff Epstein, a UAA employee, to alert him that Adam Kallick, a Hoosier Park employee who had moved to Hoosier's corporate office, would be calling him to discuss the August 12, 2017 show. Allen Decl. Ex. A at 4.

On May 4, 2017, Epstein reminded Head about the White River concert, and suggested that if Hoosier Park wished to cancel the concert at its venue because of low ticket sales and marketing issues, it should alert UAA by the following day. *Id*. at 8. Epstein explained that "once production [was] booked and paid for, [UAA would] not be in any position to offer a reduction or accept a cancellation." *Id.*

On May 5, 2017, Head emailed Epstein "accept[ing] [UAA's] offer to cancel and/or negotiate a price reduction, and by [its] email withdr[ew] the offer it made on March 8, 2017." *Id.* at 5. Head further noted that he had not, as of that day, received a written acceptance of his offer. *Id*. Head's email explained Hoosier Park's change of course, noting, *inter alia*, that the concert scheduled for The Lawn had been relocated to a closer and larger venue; that he had not been previously known of that relocation; and that it would necessitate higher marketing expenditures. *Id.* at 5–6. Head's email set out terms on which Hoosier Park would nevertheless agree to host the concert. *Id.* at 6.

A series of back and forth emails ensued in which Head and Allen discussed a reduced payment to UAA and whether the concert would go forward. *Id.* at 10–11, 17–19, 25–26, 29–30,

38–39. On May 9, 2017, Allen emailed Head alleging that Hoosier had breached their contract, that he was cancelling the concert date, and that he would sue. *Id*. at 49. No payments at any point were made by Hoosier Park to UAA.

Hoosier Park has not transacted other business with UAA or Letom. Head Decl. ¶ 17.

## II. Procedural Background

On May 19, 2017, Letom filed its complaint claiming breach of contract.[3] Dkt. 1 ("Compl.").

On July 24, 2017, Hoosier Park filed a motion to dismiss for lack of personal matter jurisdiction, Dkt. 13, and a supporting memorandum, Dkt. 14 (collectively, "MTD"). On August 7, 2017, Letom filed a memorandum in opposition  On August 14, 2017, Hoosier Park filed a reply. Dkt. 19 ("Def's Repl. Mem.").

## III. Discussion

### A. Applicable Legal Standards

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v.*

---

[3] Letom's Complaint alleged a breach of an implied or constructive contract. Compl. ¶ 1. In its opposition brief, however, Letom appears to allege two actual contracts. Pl's Opp. ¶ 9. Letom's submissions are further inconsistent as to whether there are one or two operative contracts. *Compare* Pl's Opp. ¶ 2 ("The parties operated under (2) two contracts…"), *with id.* ¶ 8 ("Defendants breached the contract threefold . . ."), *and id.* ¶ 13 ("[I]t is submitted that Defendants established a continuing relationship between the parties for the purposes of the contract in issue"). The Court has no occasion to resolve this ambiguity on the present motion.

5

*Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

To make out a *prima facie* case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish both "a statutory basis" for jurisdiction and that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-cv-01568(JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General personal jurisdiction subjects a defendant to suits on all claims.

*Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction subjects a defendant to suits on only claims that arise from the defendant's conduct in the forum. *Cortlandt*, 2015 WL 5091170, at *2; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

Letom's threadbare opposition memorandum largely uses the language of specific jurisdiction. *See* Pl's Opp., at ¶¶ 12–18 (discussing "purposeful activities," "continuing relationship," "purposeful[] avail[ment] . . . invoking the benefits and protections of New York Law," and "minimum contacts"). However, Letom does not clearly commit to exclusively that theory of personal jurisdiction. For completeness, the Court analyzes both general and specific personal jurisdiction.

### B. General Jurisdiction

In New York courts, general jurisdiction is exercised pursuant to C.P.L.R § 301. *See State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 887 (S.D.N.Y. 2017). Under C.P.L.R § 301, jurisdiction is proper when "a company 'has engaged in such a continuous and systematic course of "doing business" [in New York] that a finding of its "presence" [in New York] is warranted.'" *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 565 N.E.2d 488, 490 (N.Y. 1990)) (citations omitted) (alterations in original); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

The Due Process Clause, however, is more restrictive. A court may exercise general jurisdiction over foreign corporations only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires*, 564 U.S. at 919. "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' [and, thus, amenable to general personal jurisdiction]

7

only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

These standards are not met here as to Hoosier Park. Letom alleges in its complaint that Hoosier Park is incorporated and has its principal place of business not in New York, but in Indiana. And Letom's pleadings are devoid of any allegation that Hoosier Park has done any business in New York beyond the transaction at issue here. Indeed, Letom's only allegations even touching on New York, beyond the specific contracts at issue, are that Hoosier Park has two corporate affiliates that are incorporated in, and do business in, New York. Although activities by an affiliate can sometimes enable a finding of general jurisdiction,[4] such is not so here. Letom has not alleged any facts indicating (1) the importance of these affiliates to Hoosier Park, (2) the nature of the business, if any, that the affiliates transact for the benefit of Hoosier Park, or (3) the degree of control Hoosier Park exercises over these affiliates.[5] Letom's tenuous allegations, therefore, are not enough to establish general jurisdiction.

---

[4] Hoosier Park disputes its affiliation with these entities. For the purpose of this motion, the Court treats Letom's allegations as true. The Court also treats as true Letom's allegation that Centaur Gaming is the corporate office of Hoosier Park. But that allegation does not aid Letom, as it agrees that Centaur Gaming is an Indiana corporation.

[5] The Second Circuit has held that "the continuous course of 'doing business' in New York 'do[es] not necessarily need to be conducted by the foreign corporation itself.'" *Sonera Holding*, 750 F.3d at 224 (quoting *Wiwa*, 226 F.3d at 95 (2d Cir. 2000)). It has "interpreted New York law to include an agency theory of jurisdiction." *Id.* This theory "focuses on a forum-state affiliate's importance to the defendant." *Id.* at 225; *see also Wiwa*, 226 F.3d at 95 (under agency theory, "a court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available."). However, the Supreme Court has recently voiced disapproval of such agency analysis and appeared to favor instead an inquiry, used in other jurisdictions, which focuses on whether an affiliate is "so dominated" by the defendant "as to be its alter ego." *Daimler*, 134 S. Ct. at 759; *see also Sonera Holding*, 750 F.3d at 225. However the operative test is conceived, Letom has not made a *prima facie* showing of general jurisdiction.

### C. Specific Jurisdiction

In New York, specific jurisdiction is exercised pursuant to C.P.L.R. § 302. *See Swizz Style, Inc.*, 246 F. Supp. 3d at 887. It identifies four categories of conduct that can justify exercise of personal jurisdiction over a party. Three are clearly inapplicable: These concern (1) tortious acts in New York, (2) tortious acts outside New York, and (3) ownership of property in New York.[6] The fourth—which subjects a party that "transacts any business within the state or contracts anywhere to supply goods or services in the state" to the court's jurisdiction, *id.* § 302(a)(1)—merits further discussion.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barrett v. Tema Development (1988), Inc.*, 251 Fed. App'x 698, 700 (2d Cir. 2007) (internal citation omitted). The Court's primary consideration is "[t]he quality of the defendants' New York contacts." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). In a proper case, a single act within New York can satisfy the requirements of § 302(a)(1); where that is not so, "an ongoing course of conduct or relationship in the state may." *Licci*, 673 F.3d at 62. In making the § 302(a)(1) determination, courts take a holistic, totality of the circumstances approach. *See, e.g.*, *id.*; *Bank Brussels Lambert*, 171 F.3d at 787 (2d Cir. 1999); *Farkas v. Farkas*, 36 A.D.3d 852, 853 (N.Y. App. Div. 2007). As for the due process standard, "[b]ecause CPLR 302 does not reach as far as the constitution permits, if a defendant is amenable to long-arm jurisdiction in New York, the constitutional standard is satisfied." *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 201 (S.D.N.Y. 2006) (citing *Firma*

---

[6] Letom has not alleged that Hoosier Park committed tortious acts against it or anyone else or that it owns property in the state. Head attests that Hoosier Park does not own any property in New York, *see* Head Decl. ¶ 7, and Letom does not dispute this.

9

*Melodiya v. ZYX Music GMBH*, No. 95 Civ. 6798 (DC), 1995 WL 28493, at *3 (S.D.N.Y. Jan. 25, 1995)).

The Second Circuit has identified four factors to guide the § 302(a)(1) inquiry. They are:

(i) whether the defendant has an on-going contractual relationship with a New York corporation;
(ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
(iii) what the choice-of-law clause is in any such contract; and
(iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). Because the test turns on the totality of the circumstances, no "one factor is dispositive and other factors may be considered." *Id*. at 23.

Here, Letom alleges that Hoosier Park transacted business in New York by drafting, entering into, and breaching two contracts with a New York entity, by communicating and negotiating with a New York entity, by waiving an arbitration process that would have applied Indiana law, by "elect[ing] to apply New York choice of law," and by having affiliates in New York State. Compl. ¶¶ 14-16, 20–29; Pl's Opp. ¶¶ 10–17. Letom argues that these facts support exercise of specific jurisdiction, Pl's Opp. ¶ 18, and that the lack of a clause limiting venue to non-New York forums points to the same result, *id*. ¶ 9.

The Court considers Letom's claims in light, first, of the four factors identified by the Second Circuit.

(i) <u>Ongoing contractual relationship with a New York corporation</u>: A single, short-term transaction between the parties does not create an "ongoing contractual relationship." *See, e.g.*, *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 584–85 (S.D.N.Y. 2016);

10

*Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 317 (S.D.N.Y. 2007). In *Gordian Group*, a plaintiff allegedly "provided investment banking services to and for the benefit of [the defendant] and all of its subsidiaries" for six months pursuant to one contract. 168 F. Supp. 3d at 584–85. Similarly, in *Sandoval*, the plaintiff allegedly performed for 10 months on a contract to install an irrigation system. 507 F. Supp. 2d at 314. In each case, the district court did not find an ongoing business relationship.

The same is so here. The parties here did not transact business before or after the instant dispute over the scheduling of a concert. Head Decl. ¶¶ 16–17. And the period for performance that was contemplated here was far shorter than in *Gordian Group* or *Sandoval*. Even if UAA performed from the date the contract allegedly began, February 27, 2017, through May 9, 2017, when the contract was allegedly "cancelled," or even through May 19, 2017, the date Letom filed the complaint, the performance period still lasted under three months. That Letom has portrayed the disputed transaction as technically involving two contracts, not one, does not change the end result. *See Capstone Bus. Funding, LLC v. Denark Constr., Inc.*, No. 16 CV 2141-LTS, 2017 WL 398411, at *3 (S.D.N.Y. Jan. 30, 2017) (two estoppel certificates were "single, short-term contracts, and d[id] not establish an ongoing contractual relationship"). The contracts here were negotiated together and were designed to enable a one-day event. The parties had no ongoing contractual relationship.

(ii) <u>Location of negotiation and execution</u>: "So far as [this Court is] aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York." *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982)); *cf. Parke-Bernet Galleries, Inc. v. Franklyn*, 256

11

N.E.2d 506, 508 (N.Y. 1970) (defendant transacted business within § 302 because he was an active participant, over the telephone, in a New York auction). This is true even when a defendant has communicated "with [a] plaintiff in New York by phone, fax and possibly mail." *Bank Brussels Lambert*, 171 F.3d at 788–89; *see also Penn Grp., LLC v. Slater*, No. 07 Civ. 729 (MHD), 2007 WL 2020099, at *10 (S.D.N.Y. June 13, 2007) ("[E]ven substantial negotiations conducted by mail, telephone, or electronic communications often do not confer jurisdiction."); *Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 433 (S.D.N.Y. 1998) (iIt is "well-settled that, generally, telephone and mail contacts do not constitute 'transacting business' under the statute."). Such is the case here. The contracting process was initiated not by Hoosier Park but by Letom, and the initial (and only in-person) meeting about the agreement was held in Tennessee. Head Decl. ¶¶ 9–11, 16. Afterwards, the agreement was negotiated exclusively over email and phone. *Id.* ¶¶ 16, 18. And, at least as alleged, Hoosier Park's performance was to have been conducted entirely or almost entirely in Indiana. This factor, too, disfavors finding specific jurisdiction.

(iii) <u>Choice-of-law clause</u>: Although not dispositive, "[a] choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." *Sunward Elecs., Inc.*, 362 F.3d at 23. Here, however, Hoosier Park chose Indiana, not New York, law. This factor also disfavors specific jurisdiction.

Letom notes that Hoosier Park applied New York law in its brief seeking dismissal for lack of personal jurisdiction. Pl's Opp. ¶ 12. That fact is irrelevant. Because Letom filed this case in this District, Hoosier (and Letom) of necessity had to apply New York authorities on this motion, because "the amenability of a foreign corporation to suit in a federal court in a diversity

action is determined in accordance with the law of the state where the court sits." *Bank Brussels Lambert*, 171 F.3d at 784 (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). Hoosier Park's citation of such cases does not signify its consent to the use of this forum, or indicate that, were jurisdiction here proper, New York substantive law would apply. Quite the contrary, given the agreement's choice of law provision, Indiana law would almost certainly apply. *See Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010) ("[B]ecause defendant's principal place of business is in Ohio, and defendant's cardholder agreement instructs that Ohio law governs the agreement, its choice-of-law provision will be enforced."); *see also TransAtlantic Lines LLC v. Amergent Techs, LLC*, No. 16 Civ. 3549 (PAE), 2017 WL 78511, at *4 n.6 (S.D.N.Y. Jan. 6, 2017) (collecting cases).

(iv) <u>Notices or payments; supervision</u>: Letom has not alleged that Hoosier Park was required to send notices of any kind into New York, or that Hoosier was subject to supervision in New York (or elsewhere). However, had the agreement been fulfilled, Hoosier Park's payments to UAA were to be sent to a New York bank account. Head Decl. Exs. 4 & 5. Payments into the forum state can inform the personal jurisdiction inquiry and be a "significant contact." *First City Fed. Sav. Bank v. Dennis*, 680 F. Supp. 579, 586 (S.D.N.Y. 1988); s*ee also e.g.*, *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11 (N.Y. 2016) (finding personal jurisdiction where, *inter alia*, "the defendants actively used a correspondent bank to further a scheme that caused harm"). This factor therefore assists Letom's argument for specific jurisdiction. But it falls well short of carrying the day. "[C]ommunications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it under Section 302(a)(1)." *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at

13

*5 (S.D.N.Y. Mar. 1, 2017) (citing *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474–75 (S.D.N.Y. 1998)). The planned payments are insufficient to make out a *prima facie* showing of personal jurisdiction.

<u>Other factors</u>: The Court considers as well the other factors on which Letom relies.

First, Letom argues that the fact that Hoosier Park "waived" arbitration in Indiana—which would have been governed by Indiana law—favors exercise of personal jurisdiction here. Pl's Opp. ¶ 14. Letom does not cite any authority for that proposition. And nothing about Hoosier Park's having forgone alternative dispute resolution in another state enhances its ties to this forum. Hoosier Park's alleged refusal to arbitrate does not suggest, at all, that it intended to avail itself of the laws of New York.

Second, as noted in connection with the general jurisdiction discussion, Letom relies on the fact that Hoosier Park has New York affiliates. But Letom does not explain why these support a finding of specific jurisdiction, which requires that "the claim asserted . . . arise from [the New York] business activity." *Barrett*, 251 Fed. App'x at 700. There are no such claims here.

Third, Letom states that that the absence of a forum selection clause in the two contracts is "noteworthy." Pl's Opp. ¶ 9. Again, however, this fact does not affirmatively signal assent to a New York court's jurisdiction in connection with the contract, any more that it supports jurisdiction in any of the other 49 states.

<u>Letom's case authorities</u>: The Court, finally, consider the two cases on which Letom relies for his claim of personal jurisdiction: *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977) and *Singer v. Walker*, 209 N.E.2d 68 (N.Y. 1965) (which is more properly cited as *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*). Each is inapposite.

In *Reiner*, defendant Schwartz entered an employment contract in New York with a New York corporation to be a salesman for the company in New England. 363 N.E.2d at 551–52. He was then employed by the company for more than four years. *Id*. at 552. Schwartz was later sued by the New York corporation, and the New York Court of Appeals ultimately found personal jurisdiction proper. *Id.* at 554. *Reiner*, however, is inapposite because the facts there amply supported a finding of an ongoing contractual relationship: After responding to an advertisement, Schwartz came *to* New York, signed the contract *in* New York, and worked *for* the New York company for four years. There are no like facts here.

In *Longines-Wittnauer Watch Co.*, the New York Court of Appeals found personal jurisdiction in New York proper over an Illinois company. It noted that the company "transacted business" by "shipping substantial quantities of its products into [New York]," *id*. at 81, that the defective hammer that was the subject of the suit was one of those products, *id.*, and that "the cause of action asserted [was] clearly one 'arising from' the purposeful activities engaged in by the appellant in [New York] in connection with the sale of its products in the New York market," *id*. at 82. Again, there are no similar facts here.

In sum, considering the totality of the circumstances, Letom has failed make a *prima facie* showing of specific personal jurisdiction over Hoosier Park.

## CONCLUSION

For the reasons above, the Court grants Hoosier Park's motion to dismiss for lack of personal jurisdiction. The Clerk of the Court is respectfully directed to terminate the motion pending at Dkt. 13.

15

SO ORDERED.

/s/ Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: October 27, 2017
 New York, New York